FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 28 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FRANKLIN OWUSU-ANSAH ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | **1 09-cv-2664** |
| THE COCA-COLA COMPANY ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## PLAINTIFF'S FIRST ORIGINAL COMPLAINT

Plaintiff states the following complaint as follows:

I.

This is an action pursuant to 42 U.S.C. § 1981 and 2000e et seq., Title VII, 42 U.S.C. § 2000e, et seq ,seeking remedy for race discrimination, national origin discrimination, retaliation, and hostile or abusive work environment discrimination based on race and/or national origin, and Americans with Disability Act, 42 U.S.C. § 12102, et seq, and other claims under state law.

## II. JURISDICTION AND VENUE

1. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§1331 and 1343.

2. Venue appropriately lies in this District and Division pursuant to 28





1

U.S.C. §§ 1391 and 1367.

## III. PARTIES

3. Mr. Owusu-Ansah is a Ghanaian-American male who began working for Coca-Cola around November 1999.

4. Defendant The Coca-Cola Company, is a private company operating in the Northern District of Georgia and can be served through its Registered Agent, CT Corporation, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

## IV. FACTUAL ALLEGATIONS

5. Mr. Owusu-Ansah is a Ghanaian-American male who began working for Coca-Cola around November 1999.

6. Around May 2002, Mr. Owusu-Ansah requested vacation for June to take courses for his MBA. The vacation was approved by his manager, Ms. Carmen Rodriquez (Hispanic-American female). A few days before the start of the vacation Ms. Rodriguez told him even though he was on vacation she still expected his job to be done or else she would terminate his employment. As a result of this, Mr. Owusu-Ansah had to drop a course in order to come in to work some days during his vacation time.

7. Around January 2003, Mr. Owusu-Ansah requested vacation time for June to take courses for his MBA and it was approved by Ms. Rodriquez. The day

before the start of the vacation, Ms. Rodriquez told Mr. Owusu-Ansah she didn't care that she had approved his vacation. He had to make a choice between his job and his education. She would terminate his employment if his job was not done at the end of his vacation.

8. Mr. Owusu-Ansah went to the Ombuds Office to file a complaint. They verbally instructed Mr. Owusu-Ansah to take his vacation and also told him they would investigate after he returned from vacation.

9. Despite this, Mr. Owusu-Ansah still came to work some days to make sure his job was completed. When his vacation was over, the investigation started and subsequently, Ms. Rodriquez no longer worked for Coca-Cola.

10. After the departure of Ms. Rodriquez, management continuously created a hostile working environment for Mr. Owusu-Ansah. For instance, a co-worker named Xavier Holland (African-American male), in a fit of unprovoked anger, told Mr. Owusu-Ansah the management had shared with Mr. Holland that they were waiting for Mr. Owusu-Ansah to make a mistake so they could fire him, that he would never get a promotion there, that if he wanted to make use of his MBA he should go somewhere else, that he thought he knew everything, and that all he does was get managers fired.

11. Around August 2005, Mr. Owusu-Ansah went to the Ombuds Office

to file a complaint; despite making this complaint, the harassment continued.

12. Around November 2006, Mr. Owusu-Ansah requested reimbursement for his purchased vacation through his manager, Ms. Brenda Weathersby (Afican-American female). Around June 2007, he followed up on the request and it was denied by Ms. Weathersby.

13. Around November 2007, in a meeting with his current manager, Ms. Tanika Cabral (African-American female), Mr. Owusu-Ansah brought up the outstanding issue of his 2006 purchased vacation still not being reimbursed. He also brought up concerns about the continued hostile work environment. The latest incident was a statement made by Pat Krowitz (Caucasian male), the director of national customer support, to the administrative assistant to the Vice President, "What the hell is this boy still doing here? Why has he not been fired yet?"

14. Ms. Cabral instructed Mr. Owusu-Ansah go to Human Resources and he complied. Human Resources brought in a consultant, Mr. Marc McElHaney (Caucasian male), to investigate his concerns.

15. Mr. McElHaney determined Mr. Owusu-Ansah worked in a stressful environment and recommended he go home on paid leave until Mr. McElHaney investigated his concerns and recommended a resolution to the company.

16. While on leave, on January 28, 2008, Coca-Cola mandated Mr.

4

Owusu-Ansah see a psychiatrist or be terminated. Mr. Owusu-Ansah repeatedly asked for Coca-Cola's reason for sending him to a psychiatrist, but Mr. Owusu-Ansah never received any specific reasons from Coca-Cola.

17. Despite this, Mr. Owusu-Ansah saw the psychiatrist around January 14, 2008.

18. Coca-Cola sent another letter mandating Mr. Owusu-Ansah see the psychiatrist again. He saw the psychiatrist again around February 20, 2008. The psychiatrist told Mr. Owusu-Ansah to follow up with a psychologist.

19. On March 14, 2008, Coca-Cola sent Mr. Owusu-Ansah a letter placing him on leave without pay, and stating if he did not see the psychologist by April 1, 2008, they would consider him to have voluntarily resigned and his employment would be terminated. Thus, Mr. Owusu-Ansah saw the psychologist around March 20, 2008, as scheduled.

20. On April 15, Mr. Owusu-Ansah discovered he did not receive his semi-monthly pay via direct deposit. When Mr. Owusu-Ansah contacted payroll, they told him to contact Human Resources. When he contacted Human Resources, they directed him to reference the March 14, 2008 letter stating he had been placed on leave without pay because he had not complied with his evaluation.

21. Despite Human Resources being made aware of Mr. Owusu-Ansah's

March 20, 2008 compliance, they still kept him on leave without pay status and withheld his pay without any notification.

22. Based on the above statements, Mr. Owusu-Ansah feels he has been discriminated against on the basis of his race, sex, national origin and retaliation, in violation of Title VII, 42 U.S.C. §2000e, et seq.

23. To Mr. Owusu-Ansah's knowledge, no similarly situated Caucasian employee was mandated to see a psychiatrist or psychologist upon threat of termination.

24. To Mr. Owusu-Ansah's knowledge, no similarly situated female employee was mandated to see a psychiatrist or psychologist upon threat of termination.

25. To Mr. Owusu-Ansah's knowledge, he is the only Ghanian-American employee to have been mandated to see a psychiatrist or psychologist upon threat of termination.

26. It is Mr. Owusu-Ansah's belief that he is being retaliated against for Ms. Carmen Rodriguez's departure and for complaining about his hostile working environment conditions.

## V. CONDITION PRECEDENT

27. All conditions precedent to this lawsuit has been met.

## VI. ADMINISTRATIVE PROCEDURE

28.     Plaintiff timely filed his charge with the Equal Employment Opportunity Commission and received a notice of right to sue, attached herein as Exhibit A.

## COUNT I: RACE, SEX, NATIONAL ORIGIN IN VIOLATION OF TITLE VII AND RETALIATION AND 42 U.S.C. §1981

29.     The previous Paragraphs of this Complaint are incorporated herein by reference.

30.     Defendant, through the actions of its supervisory agents, has intentionally, maliciously, recklessly, willfully and/or wantonly discriminated against Plaintiff on the basis of his national origin, race, or color and gender and interfered with the benefits, terms, privileges, and conditions of his employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, by (among other ways):

31.     When Plaintiff complained to his superiors about the unlawful discrimination and harassment to which he was being subjected, Defendants (through their supervisory agents) retaliated against him, in violation of Title VII.

31.     As a result of Defendants' unlawful actions, Plaintiff suffered mental anguish, humiliation and economic losses.

32.     Further, as a result of Defendants' intentional, malicious, willful, reckless, and/or wanton conduct, Defendants are liable to Plaintiff for punitive damages.

## COUNT II:  DISABILITY DISCRIMINATION

33.     The previous Paragraphs of this Complaint are incorporated herein by reference.

34.     Defendant, hrough the actions of its supervisory agents, has intentionally, maliciously, recklessly, willfully and/or wantonly discriminated against Plaintiff on the basis of a perceived disability and as a result interfered with the benefits, terms, privileges, and conditions of his employment,

35.     As a result of Defendants' unlawful actions, Plaintiff has suffered mental anguish, humiliation, and economic losses.  Further, as a result of Defendants' intentional, malicious, willful, reckless, and/or wanton conduct, Defendants are liable to Plaintiff for punitive damages.

## Count III:  State Law Negligent Retention and/or Supervision

Because Plaintiff repeatedly complained to his immediate supervisor and successively higher supervisor about subordinate/coworkers' harassing conduct, and in particular, and no action was taken to prevent, stop, and/or correct such

conduct, Defendant employer negligently supervised and/or disciplined its supervisory personnel and/or negligently retained the offending staff.

### Count IV: State Law Intentional Infliction of Emotional Distress

Because Plaintiff repeatedly complained to his immediate supervisor and successively higher supervisor about subordinate/coworkers' harassing conduct and no action was taken to prevent, stop, and/or correct such conduct, Defendant employer intentionally allowed and/or condoned such harassing of Plaintiff; in particular, forcing Plaintiff to seek psychological services was outrageous and calculated to inflict emotional distress on the Plaintiff, and the Plaintiff suffered, and continue to suffer, emotional distress because of the Defendants' conduct.

### PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff demands a judgment in his favor against Defendants, jointly and severally, as appropriate in each case, and requests the following relief:

    a.    A declaration that Defendants' actions, policies and practices complained of herein violate the rights of Plaintiff as secured by Title VII and Section 1981;

    b.    An order enjoining Defendants from violating the above-

referenced federal statutes in the future;

    c.    Compensatory, punitive, liquidated, and other appropriate damages;

    d.    Pre- and post- judgment interest;

    e.    Costs and reasonable attorneys' fees in this action; and

    f.    Such other and further relief as the Court deems appropriate and in the interests of justice.

**Trial by jury is demanded on all counts so triable.**

Dated September 28, 2009.

*/s/ Sandra Jackson Sheppard*
Sandra Jackson Sheppard
Georgia Bar No. 641967
Sheppard & Associates Law Office, P.C.
455 Park Avenue, S.E.
Atlanta, GA 30312
(404) 622-5777
(404) 622-5577 Fax

Attorney for Plaintiff