IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRANKLIN OWUSU-ANSAH,

               Plaintiff,

v.

THE COCA-COLA COMPANY,

               Defendant.

CIVIL ACTION NO.

1:09-CV-2664-SCJ-WEJ

**ORDER AND
FINAL REPORT AND RECOMMENDATION**

Plaintiff, Franklin Owusu-Ansah, currently employed as a Quality Assurance Specialist by defendant, The Coca-Cola Company ("Coca-Cola"), amended [79] this action to allege (1) national origin discrimination in violation of both the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and (2) disability discrimination in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA").  (Am. Compl. ¶¶ 62-72.)[1]

---

[1] With the Court's permission, plaintiff amended the Complaint [1] to narrow his Title VII claim (initially alleging race- and sex-based discrimination), dismiss claims for negligent retention/supervision and intentional infliction of emotional distress, and clarify his disability discrimination claim as pursued under the ADA. (Compare Compl. [1], with Am. Compl.; see also Minute Sheet, Aug. 19, 2010 [70]; Order of Sept. 2, 2010 [76].)  However, the Court denied plaintiff's request to allege

This matter is now before the Court on defendant's Motion for Summary Judgment [99].  For the reasons explained below, plaintiff has abandoned his national origin discrimination claim and, regardless, that claim fails as a matter of law under both § 1981 and Title VII.  Moreover, Coca-Cola's medical inquiry regarding plaintiff's mental health did not violate the ADA because the undisputed facts show that it was both job-related and consistent with business necessity.  Therefore, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment [99] be **GRANTED**.

Before turning to the facts, the Court addresses two preliminary issues.  First, defendant filed a Motion to Strike [128] plaintiff's Response to Coca-Cola's Statement of Material Facts [105-1] ("R-DSMF") and his Declaration in Opposition to Coca-Cola's Motion for Summary Judgment [105-2].  Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which provides as follows:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court *may order*

_____

an invasion of privacy claim because that claim was based on facts available to plaintiff before the amendment deadline set forth in the Scheduling and Discovery Order.  (Order of Sept. 2, 2010.)

> *stricken from any pleading* any insufficient defense or any redundant,
> immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f) (emphasis added).

Because neither plaintiff's R-DSMF nor his Declaration were attached to a pleading,[2] but were part of his response to defendant's Motion for Summary Judgment, Coca-Cola should have filed a notice of objection to the challenged responses and testimony, not a motion to strike. Jordan v. Cobb County, Ga., 227 F. Supp. 2d 1322, 1346 (N.D. Ga. 2001). Nevertheless, because the Court may only consider admissible evidence when deciding a motion for summary judgment, the Court has reviewed defendant's Motion to Strike, plaintiff's Response [129], and defendant's Reply [130]. As discussed below, the Court rejects certain assertions in plaintiff's R-DSMF that are not factually supported and, where appropriate, deems admitted certain supported, relevant facts proposed by defendant. Likewise, the Court rejects assertions made by plaintiff in his Declaration that are inadmissible, not based on personal knowledge, irrelevant, or repetitive of his R-DSMF. However, the Court concludes that plaintiff did not file his Declaration in bad faith or solely for the

---

[2] Pleadings consist of a complaint, an answer, an answer to a counter-claim, an answer to a cross-claim, a thirty-party complaint, a thirty-party answer, and a reply to an answer. Fed. R. Civ. P. 7(a).

purpose of delay. Accordingly, the Court **GRANTS IN PART** defendant's Motion to Strike [128], but **DENIES** defendant's request for reimbursement of its associated attorney's fees.[3]

Second, plaintiff has abandoned his national origin discrimination claim by failing substantively to respond to defendant's arguments relating to that claim. See Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005) (observing that a plaintiff's failure to respond to defendant's legal arguments relating to a claim constitutes abandonment of the claim, and finding that, by failing to response to defendant's argument that no tangible employment action occurred, plaintiff conceded that portion of his hostile environment claim). Moreover, plaintiff's claim fails as a matter of law under both § 1981 and Title VII. Section 1981 applies only to claims of race-based discrimination, not national origin. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) (noting that the plaintiff's § 1981 case may proceed on remand only if he can prove intentional discrimination based on his race, "rather than solely on the place or nation of his origin"); Tippie v. Spacelabs Med., Inc., 180 F. App'x 51, 56 (11th Cir. 2006) (per

---

[3] Federal Rule of Civil Procedure 56(h) permits an award of attorney's fees where the Court is satisfied that "an affidavit or declaration . . . is submitted in bad faith or solely for delay." Fed. R. Civ. P. 56(h).

AO 72A
(Rev.8/82)

curiam).  Additionally, plaintiff cannot meet his burden to prove a prima facie case

of national origin discrimination.  In his Response in Opposition [105], plaintiff does

not dispute defendant's contention that the medical inquiry was a discrete act, and

there is no evidence the inquiry itself was related to plaintiff's national origin.  See

Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002) (noting that, under

burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973), plaintiff relying on circumstantial evidence to prove discrimination

first must establish prima facie case, including that alleged discrimination was based

on membership in protected class).  Likewise, plaintiff does not dispute that all other

instances of alleged discrimination occurred more than 180 days before plaintiff filed

a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC").  See 42 U.S.C. § 2000e-5(e) (requiring plaintiff to file charge within 180

days of unlawful employment practice).  Thus, even viewing the facts in the light

most favorable to plaintiff, a discrimination claim based on those alleged incidents

is time barred.

Accordingly, the undersigned **RECOMMENDS** that defendant's Motion for

Summary Judgment on plaintiff's § 1981 and Title VII national origin discrimination

claims be **GRANTED**. The undersigned proceeds with a recitation of only those facts relevant to plaintiff's disability discrimination claim.

## I.   STATEMENT OF FACTS

In compliance with Local Rule 56.1(B)(1)-(2), Coca-Cola as movant filed a Statement of Undisputed Material Facts [99-2] ("DSMF"), to which plaintiff filed a response. (See R-DSMF.) The Court accepts as undisputed those proposed facts that plaintiff admits. (Id. ¶¶ 1-6, 81, 84, 90, 93-94, 100, 103-104, 109, 111-112, 116-118, 124, 127, 134.)[4] The Court disregards proposed facts, and plaintiff's responses thereto, which are not relevant to plaintiff's disability discrimination claim. (See DSMF ¶¶ 7-16, 18-24, 26, 28-37, 39-58, 60-78, 113, 125-126, 128-130, 132-133.) Where plaintiff denies a relevant proposed fact, the Court reviews the record to determine whether the fact is disputed, and if so, whether any dispute is material. Where appropriate, the Court includes facts from its own review of the record. See

_____

[4] Plaintiff did not file a statement of additional material facts as required by Local Rule 56.1(B)(2)(b). Instead, he makes numerous factual assertions in his response brief [105]. Pursuant to Local Rule 56.1(B)(1)(d), the Court will not consider any fact set out only in a party's brief. See N.D. Ga. R. 56.1(B)(1)(d); see also id. 56.1(B)(2)(b) (statement of additional material facts must meet requirements of Local Rule 56.1(B)(1)). However, the Court does consider plaintiff's R-DSMF and the arguments set forth in his response brief.

6

Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### A.    Plaintiff's Employment With Defendant

Plaintiff began working for Coca-Cola in 1999 as a Customer Service Representative I at a call center in Dunwoody, Georgia.  (DSMF ¶ 2; R-DSMF ¶ 2.) Defendant promoted plaintiff three times between 2001 and 2005, elevating him to his current position of Quality Assurance Specialist.  (DSMF ¶¶ 3-5; R-DSMF ¶¶ 3-5; see also DSMF ¶ 134; R-DSMF ¶ 134.)  At present, plaintiff's job duties involve monitoring the performance of frontline call center associates and providing feedback as to whether those employees are meeting quality standards.  (DSMF ¶ 6; R-DSMF ¶ 6.)

Plaintiff testified that between 2000 and July 2007, managers and other employees of Coca-Cola discriminated or harassed him because he is a native of Ghana.  (Pl.'s Dep. Vol. I [131-1] 13-14, 18-22, 29, 116-17; see also DSMF ¶ 1; R-

7

DSMF ¶ 1.)[5]  However, plaintiff did not report those instances to defendant's human resources department.  (DSMF ¶ 80; see also id. ¶¶ 17, 25, 27, 38, 59, 79.)[6]

**B.    Plaintiff's Meeting With Ms. Cabral**

On December 14, 2007, plaintiff met with his manager at the time, Tanika Cabral, for a monthly "one-on-one" meeting.  (DSMF ¶ 81; R-DSMF ¶ 81.)[7] Plaintiff prepared an agenda by writing responses on a questionnaire prepared by Ms. Cabaral.  (DSMF ¶ 82; R-DSMF ¶ 82; see also Pl.'s Dep. Vol. I 283 & Ex. 14 [131-13].)  Under the heading, "Barriers to success & proposed resolutions," plaintiff wrote "Candid discussion about work environment."  (Pl.'s Dep. Ex. 14.)  Plaintiff provided the same response to the question, "What steps have you taken to move closer to your career goals?"  (Id.)  Ms. Cabral asked plaintiff to explain those responses; plaintiff told Ms. Cabral about several of the incidents of alleged mistreatment he had experienced over the course of his employment.  (DSMF ¶ 83;

---

[5] The fact set forth in the preceding sentence is included for background purposes only.  As explained above, the undersigned **RECOMMENDS** entry of summary judgment for defendant on plaintiff's national origin discrimination claim.

[6] The Court overrules plaintiff's objections to DSMF ¶¶ 17, 25, 27, 38, 59, 79-80 as ineffective and argumentative.  See N.D. Ga. R. 56.1(B)(2)(a)(2).

[7] Plaintiff testified that Ms. Cabral never commented on his race or national origin.  (Pl.'s Dep. Vol. I 113.)

AO 72A
(Rev.8/82)

Cabral Dep. [113] 79-80, 101, 102.)[8]  He also told Ms. Cabral that other employees

were laughing at him.  (DSMF ¶ 84; R-DSMF ¶ 84.)

In his July 6, 2010 deposition, plaintiff characterized that discussion as

follows:

> I wasn't happy about the way I was being treated in my environment.
> But there was no–there was no issue with anybody being upset.  It was
> a routine One-on-One which I had done for years I worked at Coca-
> Cola.  And there was no issue with anybody being upset with anything.
> It was just I meet with my manager we have a preset template
> questionnaire.  I answer those questions.  We go over and discuss
> details about it.  It had nothing to do with anybody being upset or
> anybody acting in any inappropriate manner during that session.
>
>           . . .
>
> . . . [A]t the end of the meeting, as with all others, with all the One-on-
> One's, it ended cordially.  At the end of the meeting, I just upped and
> I left.  It ended cordially.  I didn't leave there with any inkling that there
> was anything wrong.

(Pl.'s Dep. Vol. I 289-90.)

---

[8] Plaintiff's objection is overruled; DSMF ¶ 83 is supported by the record
citation and does not violate Local Rule 56.1(B)(1)(c)–prohibiting the movant from
stating a proposed fact as an issue or legal conclusion–as plaintiff contends.  (See R-
DSMF ¶ 83.)

AO 72A
(Rev.8/82)

Ms. Cabral, however, left the meeting with a different impression of plaintiff's demeanor–"agitated."  (Cabral Dep. 80-81, 95, 113.)[9]  Ms. Cabral immediately contacted her supervisor, Cassandra Cliette, who serves as defendant's Director of Learning and Organizational Development.  (DSMF ¶ 87; Cabral Dep. 96-97, 119; Cliette Dep. [114] 7, 18-20.)[10] Ms. Cabral told Ms. Cliette that plaintiff had become agitated during the meeting, banged his fist on the table where he and Ms. Cabral were seated, and stated that someone was "going to pay for this."  (Cabral Dep. 95-98, 119-21, 125; Cliette Dep. 18-20.)  Ms. Cliette instructed Ms. Cabral to inform defendant's human resources office of her concerns.  (Cabral Dep. 125-26; Cliette Dep. 21-22.)

----

[9] Plaintiff and Ms. Cabral's accounts of their meeting differ; as a result, plaintiff objects to DSMF ¶¶ 85-86, arguing that Ms. Cabral and other deponents are not credible.  (See R-DSMF ¶¶ 85-86.)  However, the Court does not make credibility determinations at this stage of the litigation; rather, it views the evidence in a light most favorable to the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the Court overrules plaintiff's objections and restates those proposed facts above to address the discrepancy between plaintiff's and Ms. Cabral's account of their meeting.

[10] The Court overrules plaintiff's objection to DSMF ¶ 87 as ineffective and argumentative.  See N.D. Ga. R. 56.1(B)(2)(a)(2).

10

**C.     Defendant's Response to Ms. Cabral's Concerns**

Ms. Cabral and Ms. Cliette contacted Melissa Welsh, defendant's Senior Human Resources Manager.  (Cabral Dep. 126; Welsh Dep. [116] 15, 17.)  Ms. Cabral told Ms. Welsh that plaintiff had become agitated during a meeting, indicated that he felt he was being treated unfairly, pounded on the table, and stated, "Someone at Coca-Cola will pay."  (Welsh Dep. 17-18; see also DSMF ¶ 88.)[11]  After hearing Ms. Cabral's account of her meeting with plaintiff, Ms. Welsh became concerned "because it sounded as though a threat had been made against an employee, or employees of the company."  (DSMF ¶ 89.)

Ms. Welsh contacted Leslie Davis, one of defendant's Security Managers, to apprise her of the situation and request direction.  (DSMF ¶ 90; R-DSMF ¶ 90.)  Ms. Davis, in turn, contacted Marc McElhaney, Ph.D., a consulting psychologist who specializes in crisis management and threat assessment.  (DSMF ¶ 91; see also McElhaney Dep. [119] 75.)[12]  Ms. Davis asked Dr. McElhaney to assess plaintiff and

---

[11] The Court overrules plaintiff's objections to DSMF ¶¶ 88-89 as ineffective and argumentative.  See N.D. Ga. R. 56.1(B)(2)(a)(2).

[12] Plaintiff objects to DSMF ¶¶ 91-92, asserting that Phillip Cox, one of defendant's Security Managers and a co-worker of Ms. Davis, engaged Dr. McElhaney.  (See R-DSMF ¶¶ 91-92.)  The record evidence suggests that Ms. Davis initially contacted Dr. McElhaney and then turned the investigation over to Mr. Cox

11

"[t]o review the situation, and ensure that there was no risk to the employees, and to take whatever action would be appropriate, based on the information gathered in the review." (Davis Dep. 54, see also id. at 51-53; DSMF ¶ 92.)[13]

On December 19, 2007, Ms. Welsh met with plaintiff and asked him to discuss in detail his concerns about the work environment which he had referenced to Ms. Cabral at the meeting on December 14, 2007. (Welsh Dep. 30, 37-40.) Plaintiff declined to do so. (Id. at 30, 40.) According to Ms. Welsh, "I explained to him in that conversation that I could not investigate if I did not have specific details." (Id. at 30; see id. at 40.) Ms. Welsh then advised plaintiff that, on occasion, defendant uses a consultant to resolve workplace issues and asked if he would be willing to speak with a consultant. (Id. at 40; Pl.'s Dep. Vol. I 293.) He agreed and Ms. Welsh introduced plaintiff to Mr. McElhaney, who interviewed plaintiff immediately. (Welsh Dep. 40-41; Pl.'s Dep. Vol. I 293-94.)[14]

---

while she was on vacation. (Davis Dep. [118] 27-28, 51; McElhaney Dep. 75, 82.) Whether Ms. Davis or Mr. Cox engaged Dr. McElhaney is irrelevant; thus, the Court overrules plaintiff's objections to DSMF ¶¶ 91-92.

[13] The sentence preceding this note is a restatement of DSMF ¶ 92. The Court cites directly to Ms. Davis's deposition for accuracy.

[14] Dr. McElhaney interviewed plaintiff at defendant's Call Center in Dunwoody. (DSMF ¶ 93; R-DSMF ¶ 93.)

12

Plaintiff described for Dr. McElhaney many of the same incidents that he had discussed with Ms. Cabral. (DSMF ¶ 94; R-DSMF ¶ 94.) Dr. McElhaney testified that he had "significant concerns about [plaintiff's] emotional and psychological stability" (DSMF ¶ 97), and "felt like there was a strong possibility that [plaintiff] was delusional." (Id. ¶ 96.) He concluded that plaintiff was "a very stressed and agitated individual" (McElhaney Dep. 93; see also DSMF ¶ 95),[15] and recommended to Ms. Welsh that plaintiff be placed on paid leave to allow time for further review. (DSMF ¶ 98.) As a result, Coca-Cola placed plaintiff on paid leave effective December 19, 2007. (Id. ¶ 99.)[16]

On January 10, 2008, Dr. McElhaney sent a letter to Christopher Riddell, M.D., a psychiatrist, referring plaintiff for evaluation. (DSMF ¶ 101.)[17] Dr. McElhaney requested that Dr. Riddell address with plaintiff "the issue of stress and

---

[15] The sentence preceding this note is a restatement of DSMF ¶ 95. The Court cites directly to Dr. McElhaney's testimony for accuracy. Additionally, plaintiff's objections to Dr. McElhaney's testimony are overruled, as it is admissible evidence of his opinion. (See R-DSMF ¶¶ 95-98.)

[16] The Court overrules plaintiff's objection to DSMF ¶ 99 as irrelevant and argumentative. (See R-DSMF ¶ 99.)

[17] The Court overrules plaintiff's objections to DSMF ¶¶ 101-102 as argumentative. (See R-DSMF ¶¶ 101-102.) Dr. McElhaney's referral letter is admissible as evidence of his opinion.

13

. . . explore if there is any need for psychiatric treatment and/or continued leave on a short term disability status." (Id. ¶ 102.)  Dr. McElhaney arranged for Dr. Riddell to evaluate plaintiff on January 14, 2008.  (Id. ¶ 100; R-DSMF ¶ 100.)  Plaintiff attended that appointment, but refused to answer Dr. Riddell's questions regarding his employment or to sign a release allowing Dr. Riddell to discuss the evaluation with Dr. McElhaney.  (DSMF ¶ 103; R-DSMF ¶ 103.)  As a result, Dr. Riddell was unable to complete the evaluation.  (DSMF ¶ 104; R-DSMF ¶ 104.)

On January 22, 2008, Dr. McElhaney sent the following letter to Ms. Welsh, stating, in relevant part:

> I was initially asked to meet with Mr. Owusu-Ansah on December 19, 2007, in my role as a psychological consultant to the Coca-Cola Company. . . .
>
> In my interview with Mr. Owusu-Ansah, he was clearly very distressed by a series of incidents in which he alleged that he was mistreated by members of management or by other employees.  I was very concerned that he was quite agitated and that the level of agitation appeared to be out of proportion to the actual presumed impact of some of the described events.  I recommended to the company that he be placed on a paid leave status to allow time for further review.
>
> During the course of my review and after further conversations with Mr. Owusu-Ansah regarding the level of emotional distress, I suggested that he seek a consultation with a psychiatrist or psychologist, to determine whether he was in need of treatment and to make certain that there was nothing mentally that could interfere with his return to work.

14

He agreed and allowed me to suggest a psychiatrist under his medical plan.  However, once he arrived at the psychiatrist's office, he refused to speak to the psychiatrist, wanting something in writing from the company regarding this recommendation.

This consultant continues to have concerns about Mr. Owusu-Ansah's apparent level of emotional distress and also about his ability to perceive events accurately.  His perceptions of mistreatment are vague and difficult to investigate and have not yet been validated. . . .

In my opinion, his concerns cannot be fully addressed without ruling out the possibility of a mental condition that influences these perceptions.  I am also concerned about the level of agitation that is associated with these perceptions, and their subsequent impact on his ability to carry out his duties and relate to other employees successfully.  I therefore recommend that Mr. Owusu-Ansah undergo a psychiatric/psychological fitness-for-duty evaluation to rule out the possibility of a mental condition that could interfere with his ability to successfully and safely carry out his job duties.

(Pl.'s Dep. Ex. 19 [131-17]; see also DSMF ¶¶ 105-106.)[18]

## D.    Defendant's Medical Inquiry

On January 28, 2008, Ms. Welsh sent the following letter to plaintiff:

The purpose of this letter is to address some of [Coca-Cola's] observations and concerns relative to your behavior in the workplace, along with the results of your recent discussion with our consultant.

---

[18] The block quote preceding this note is an excerpt from the document paraphrased in DSMF ¶¶ 105-106.  The Court cites directly to Dr. McElhaney's January 22, 2008 letter for accuracy.  Additionally, plaintiff's objections to the letter are overruled, as it is admissible evidence of Dr. McElhaney's recommendation to defendant.  (See R-DSMF ¶¶ 105-106.)

Your actions have resulted in the Company requiring you to complete
an evaluation to identify whether there are any issues that could
represent a risk to the safety of others in the workplace.  In addition,
full compliance with the terms outlined in this memo is a condition to
your continued employment with the Company.  The terms include the
following:

- You will be required to comply with potential
recommendations as required by the evaluation.

- You will be required to release all information associated
with the completion of this counseling.

- Any retaliatory actions taken against any employee of the
Company will result in immediate termination.

You understand that failure to comply with any of the above conditions
or failure to comply with all aspects of the Company's Safe Workplace
Policy will subject you to immediate termination.

(Pl.'s Dep. Ex. 21 [131-18]; see also DSMF ¶ 107.)[19]  Plaintiff read the letter and

signed and dated it on February 1, 2008.  (Pl.'s Dep. Vol. I 320.)[20]

---

[19] The block quote preceding this note is an excerpt from the document
paraphrased in DSMF ¶¶ 107.  The Court cites directly to Ms. Welsh's January 28,
2008 letter for accuracy.  Additionally, plaintiff's objections to the admissibility of
that letter are overruled.  (See R-DSMF ¶ 107.)

[20] The Court sustains plaintiff's objection to DSMF ¶ 108, as that proposed
fact is not clearly supported by the record citation.  (See R-DSMF ¶ 108.) The Court
includes the fact preceding this note to show that plaintiff acknowledged receiving
and reading Ms. Welsh's January 28, 2008 letter.

16

On February 20, 2008, plaintiff returned to Dr. Riddell for a second appointment.  (DSMF ¶ 109; R-DSMF ¶ 109.)  Dr. Riddell recommended that plaintiff undergo the Minnesota Multiphasic Personality Inventory ("MMPI") before being cleared to return to work.  (DSMF ¶ 110.)[21]  Dr. McElhaney scheduled an appointment for plaintiff to take the MMPI at the office of psychologist Anthony Levitas, Psy. D., on March 11, 2008.  (Id. ¶ 111; R-DSMF ¶ 111.)  Plaintiff did not attend the appointment.  (DSMF ¶ 112; R-DSMF ¶ 112.)

On March 14, 2008, Ms. Welch sent a letter to plaintiff advising him that he was not in compliance with the conditions outlined in her January 28, 2008 letter.  (DSMF ¶ 114.)[22]  The letter also stated that Coca-Cola was placing plaintiff on leave without pay effective March 16, 2008, and concluded with the following warning: "If you do not comply with the evaluation process by April 1, 2008 [Coca-Cola] will consider you to have voluntarily resigned from your position and your employment

─────────────

[21] Plaintiff's objections to DSMF ¶ 110 are overruled, as Dr. Riddell's recommendation is admissible evidence of his opinion.  (See R-DSMF ¶ 110.)

[22] The Court overrules plaintiff's hearsay objections, as Ms. Welsh's March 14, 2008 letter is admissible evidence of defendant's communications with plaintiff.  (See R-DSMF ¶¶ 114-115.)  Moreover, plaintiff admits receiving the letter.  (See id. ¶ 114a.)

17

will be terminated."  (Id.  ¶ 115.)  On April 1, 2008, Coca-Cola placed plaintiff on unpaid leave.  (Id. ¶ 116; R-DSMF ¶ 116.)

Dr. McElhaney scheduled an appointment for plaintiff to take the MMPI on March 20, 2008.  (DSMF ¶ 117; R-DSMF ¶ 117.)  Plaintiff attended the appointment and took the test.  (DSMF ¶ 118; R-DSMF ¶ 118.)

On April 8, 2008, Dr. Levitas sent a report of plaintiff's MMPI test results to Dr. Riddell.  (DSMF ¶ 119.)[23]  The report states that plaintiff's clinical profile "has marginal validity because [plaintiff] attempted to place himself in an overly positive light by minimizing faults and denying psychological problems," and opines that plaintiff "is unlikely to seek psychological treatment or to cooperate fully with treatment if it is implemented."  (Id. ¶ 120)  Nevertheless, the report concludes that plaintiff's profile is "within normal limits."  (Id. ¶ 121.)

After reviewing the report, Dr. Riddell sent a letter to Dr. McElhaney on April 9, 2008, stating that the evaluation of plaintiff was complete and that, in his opinion, plaintiff was able to return to work.  (DSMF ¶ 122.)[24]  Based on those findings, Dr.

---

[23] Plaintiff's objections to DSMF ¶¶ 119-121 are overruled, as Dr. Levitas's recommendation is admissible evidence of his opinion.  (See R-DSMF ¶¶ 119-121.)

[24] Plaintiff's objections to DSMF ¶¶ 122-23 are overruled, as the opinions of Drs. Riddell and McElhaney are admissible.  (See R-DSMF ¶¶ 122-23.)

AO 72A
(Rev.8/82)

McElhaney notified Ms. Davis that plaintiff could return to work.  (Id. ¶ 123.)

Plaintiff returned to work on April 22, 2008.  (DSMF ¶ 124; R-DSMF ¶ 124.)

## II.    SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

AO 72A
(Rev.8/82)

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. For factual issues to be "genuine," they must have a real basis in the record. Matsushita

20

<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  <u>Id.</u> at 587.

## III.   ANALYSIS

Based on Dr. McElhaney's recommendation, defendant required that plaintiff submit to a fitness-for-duty evaluation or be terminated.  Plaintiff alleges that the subsequent examinations conducted by Drs. Riddell and Levitas were improper medical inquiries in violation of the ADA.

Pursuant to § 12112(d)(4)(A) of the ADA,

> [a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).[25]  In order to show that a challenged medical inquiry was proper, an employer must demonstrate that (1) there was an objective, legitimate

---

[25] The ADA's prohibition against improper medical inquiries applies to every employee, regardless of whether he is a qualified individual with a disability. <u>Roberts v. Rayonier, Inc.</u>, No. 3:03-CV-55-J-025TEM, 2005 WL 3500320, at 2 n.1 (M.D. Fla. Dec. 21, 2005) (citing <u>Fredenburg v. Contra Costa Dep't of Health Servs.</u>, 172 F.3d 1176, 1181-82 (9th Cir. 1999)); <u>see also</u> <u>Harrison v. Benchmark Elecs. Huntsville, Inc.</u>, 593 F.3d 1206, 1213-14 (11th Cir. 2010).

21

reason to question the employee's capacity to perform his duties, (2) a medical examination was required to determine whether the plaintiff could perform job-related duties, and (3) the examination requested was a "reasonably effective method" of resolving achieving the employer's asserted business necessity. Mickens v. Polk Cnty. Sch. Bd., 430 F. Supp. 2d 1265, 1279 (M.D. Fla. 2006); see also Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) (employer bears the burden of demonstrating business necessity); Tice v. Centre Area Transp. Auth., 247 F.3d 506, 518 (3d Cir. 2001) ("The ADA's requirement that [a medical examination] be consistent with business necessity is an objective one.").

Although not controlling, the EEOC enforcement guidelines explain that a medical examination or disability-related inquiry may be both job-related and a business necessity when "an employer has a reasonable belief, based on objective evidence, that . . . an employee will pose a direct threat due to a medical condition." See EEOC, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations Of Employees Under the Americans with Disabilities Act, Notice No. 915.002, ¶ 5 (July 27, 2000) (hereinafter "EEOC, Enforcement Guidance"), http://www.eeoc.gov/policy/docs/guidance-inquiries.html (internal quotations omitted). The ADA defines "direct threat" as "a significant risk to the health or

safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3).

Likewise, courts have found job-relatedness and business necessity where an inquiry into an employee's mental health is triggered by safety concerns.  See, e.g., Leach v. Mansfield, No. H-07-4331, 2009 WL 3190463, at *4 (S.D. Tex. Sept. 28, 2009) (requiring psychiatric examination and doctor's note certifying ability to return to work of employee who complained of emotional reaction from work stress and sent increasingly aggressive e-mails to other employees); Bodenstab v. Cnty. of Cook, 539 F. Supp. 2d 1009, 1020 (N.D. Ill. 2008) (finding that it would be "grossly negligent" for an employer not to order a psychiatric examination when an employee makes serious workplace threats); Mickens, 430 F. Supp. 2d at 1279-80 (erratic behavior in response to performance criticism was legitimate basis for requiring medical exam).  Moreover, the case law is clear that employers do not have to wait until an employee's job performance suffers, or a perceived threat results in injuries before requiring the employee undergo a fitness for duty examination.  See Brownfield v. City of Yakima, 612 F.3d 1140, 1145 (9th Cir. 2010) (rejecting plaintiff's argument that business necessity standard cannot be met without showing employee's job performance had suffered as a result of medical problems); Watson

23

v. City of Miami Beach, 177 F.3d 932, 934-35 (11th Cir. 1999) (finding medical inquiry of police officer who displayed "unusually defensive and antagonistic behavior towards his co-workers and supervisors" permissible under ADA); Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998) ("Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims . . . ."); Fritsch v. City of Chula Vista, No. 98-0972-E-CGA, 2000 WL 1740914, at *6 (S.D. Cal. Feb. 22, 2000) ("In today's climate of workplace violence, an employer need not wait for the sound of gunfire to institute a preliminary investigation into the mental stability of an employee").

Here, the undisputed evidence demonstrates that Coca-Cola had a legitimate, non-discriminatory reason to question whether plaintiff was a direct threat to himself or to its employees due to possible mental illness. Although plaintiff primarily teleworked, the undisputed evidence shows that he periodically met with other employees and his managers at the Dunwoody call center and attended training sessions with co-workers. After one of those meetings, plaintiff's manager at the time (Ms. Cabral) told her superiors at Coca-Cola (Ms. Cliette and Ms. Welsh) that plaintiff became very agitated regarding his treatment by co-workers and stated that

24

someone was "going to pay."  Plaintiff's denial that he made such a statement is irrelevant, as defendant's decision maker in this case (Ms. Welsh) believed that he had made a threatening statement.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (explaining that, when evaluating reason for discharge, inquiry is limited to whether decision makers believed employee engaged in the reported misconduct and, if so, whether that belief was the reason for the adverse action).

Before requiring the medical inquiry at issue, Ms. Welsh attempted to discuss Ms. Cabral's allegations with plaintiff; he declined.  Ms. Welsh then requested the assistance of a psychological consultant (Dr. McElhaney) to evaluate plaintiff.  Dr. McElhaney told Ms. Welsh that plaintiff was extremely agitated and exhibited a high level of emotional distress; he recommended that plaintiff be placed on paid leave.  Ms. Welsh had no reason to doubt Ms. Cabral or Dr. McElhaney's consistent accounts of plaintiff's demeanor.  Moreover, plaintiff declined to discuss his workplace issues with Ms. Welsh.

After further interactions with plaintiff, Dr. McElhaney advised Ms. Welsh that plaintiff possibly suffered from a mental condition that could interfere with his ability to "successfully and safely carry out his job duties."  (Pl's. Dep. Ex. 19, at 2.)

25

Faced with a report from plaintiff's supervisor that he made a threatening remark, plaintiff's refusal to discuss the incident with Ms. Welsh, and Dr. McElhaney's concern that plaintiff was agitated, emotionally stressed, and possibly a safety risk in the workplace, defendant had an objective, reasonable basis to question plaintiff's ability to perform his job without posing a direct threat to himself or other employees. See EEOC, Enforcement Guidance ¶ 5 ("An employer also may be given reliable information by a credible third party that an employee has a medical condition, or the employer may observe symptoms indicating that an employee may have a medical condition that . . . will pose a direct threat. In these situations, it may be job-related and consistent with business necessity for an employer to make disability-related inquiries or require a medical examination.") Moreover, plaintiff's lack of prior disciplinary action and positive job performance reviews do not rebut defendant's legitimate concern.

Additionally, defendant engaged a third-party medical expert to advise it how best to determine whether plaintiff could safely perform his job duties. See Sullivan v. River Valley Sch. Dist., 20 F. Supp. 2d 1120, 1126 (W.D. Mich. 1998) (noting that, by obtaining advice from outside psychologist that mental examination was necessary, employer buttressed its claim that medical inquiry was proper). Only

AO 72A
(Rev.8/82)

after Dr. McElhaney recommended a fitness for duty evaluation as the best means to make that determination did defendant require plaintiff to submit to medical inquiries by Drs. Riddell and Levitas, or be terminated.  Requesting a psychological examination under those circumstances was a reasonably effective means to determine if plaintiff could safely perform his duties.  See Mickens, 430 F. Supp. 2d at 1280 ("Requesting a psychological examination constitutes "a reasonably effective method" of achieving the [defendant's] goal of determining whether [the plaintiff] could perform his duties."); Fritsch, 2000 WL 1740914, at *6 ("It was reasonable and appropriate for the employer to seek the guidance of a mental health worker, and to follow that advice. This procedure allowed the employer to gather the necessary information to allay its reasonable fears that an employee was unfit to perform her job responsibilities.").  Additionally, those mental health professionals, not defendant, determined the scope of the fitness for duty evaluation necessary to evaluate plaintiff's mental health.  See Conrad v. Bd. of Johnson Cnty. Comm'rs, 237 F. Supp. 2d 1204, 1234 (D. Kan. 2002) (declining to hold employer liable for specific inquiries made by independent health professional retained to conduct fitness for duty examination of employee).

27

In sum, the undisputed evidence reveals sufficient justification for requiring plaintiff to undergo a fitness for duty evaluation, including psychiatric examinations by Drs. Riddell and Levitas.  Thus, defendant complied with § 12112(d)(4)(A)'s business necessity and job relatedness requirements when it insisted that plaintiff be evaluated or face termination.  Accordingly, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment as to plaintiff's disability discrimination claim be **GRANTED**.[26]

---

[26] The Court permitted plaintiff to amend his Complaint to restate his disability discrimination claim as pursued under 42 U.S.C. § 12112(d)(4), concluding that such a claim was within the scope of the EEOC investigation which could reasonably be expected to grow out of his EEOC charge.  (Order of Sept. 2, 2010.)  Defendant objected to that Order, arguing that plaintiff's ADA claim is barred for failure to exhaust administrative remedies.  (Def.'s Partial Objection [83].)  Defendant repeated that argument in support of its Motion for Summary Judgment.  The undersigned does not revisit that issue because it is moot given the recommendation that plaintiff's ADA claim be dismissed.

28

IV.   **CONCLUSION**

As discussed above, plaintiff has abandoned his national origin discrimination claim (asserted pursuant to 42 U.S.C. § 1981 and Title VII), and has failed to create a triable issue of material fact on his disability discrimination claim (asserted pursuant to the ADA).  Therefore the undersigned

**GRANTS IN PART** defendant's Motion to Strike [128], but **DENIES** defendant's request for reimbursement of its associated attorney's fees, and

**RECOMMENDS** that defendant's Motion for Summary Judgment [99] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 17th day of June, 2011.


_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

29

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRANKLIN OWUSU-ANSAH,

              Plaintiff,

    v.

THE COCA-COLA COMPANY,

              Defendant.

CIVIL ACTION FILE

NO. 1:09-CV-2664-SCJ-WEJ

**ORDER FOR SERVICE OF
FINAL REPORT AND RECOMMENDATION**

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within fourteen days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court.  If no objections are filed, the Final Report and

Recommendation may be adopted as the opinion and order of the District Court, and

any appellate review of factual findings will be limited to a plain error review.

United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with

objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 17th day of June, 2011.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2